UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| YI SUN, Individually and On Behalf of All Others Similarly Situated,<br><br>                                    Plaintiff,<br><br>             v.<br><br>CHINACACHE INTERNATIONAL HOLDINGS LTD., SONG WANG, GUANGSHENG MENG, FENGYE GAO, and JING AN.<br><br>                                    Defendants. | Case No.<br><br><u>CLASS ACTION COMPLAINT</u><br><br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Yi Sun ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding ChinaCache International Holdings Ltd. ("ChinaCache" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired ChinaCache securities between April 10, 2015 and May 17, 2019, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      ChinaCache was founded in 1998 and is headquartered in Beijing, the People's Republic of China ("China" or "PRC").  ChinaCache's American depositary receipts ("ADRs") trade on the NASDAQ under the ticker symbol "CCIH."

3.      ChinaCache is an investment holding company that provides content and application delivery services in the PRC.  It purports to offer a portfolio of services and solutions to businesses, government agencies, and other enterprises to enhance the reliability and scalability of their online services and applications.

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:  (i) ChinaCache and Defendant Song Wang ("Wang")—the Company's Chief Executive Officer ("CEO") and Chairman of the Board of Directors ("Chairman") at all relevant times—were engaged in enterprise bribery; (ii) the foregoing conduct placed ChinaCache and Wang at a heightened risk of criminal investigation and enforcement action by government authorities, which would foreseeably disrupt the Company's operations; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.      On April 29, 2019, ChinaCache filed a Notification of Late Filing on Form NT 20-F with the SEC, disclosing that the Company would delay filing its Annual Report for 2018 on Form 20-F (the "2018 20-F").  According to the Form NT 20-F, ChinaCache was delaying filing the 2018 20-F "because U.S. GAAP [Generally Accepted Accounting Principles] audited financial statements of the [Company] are not yet available."

6.      Then, on May 17, 2019, ChinaCache issued a press release disclosing that the Company and Defendant Wang were under criminal investigation by a government prosecutor office in Beijing for charges of enterprise bribery, and that Wang had resigned from his position as the Company's CEO (the "May 2019 Press Release").

7.      On this news, ChinaCache's ADR price fell $0.22 per share, or 20%, to $0.88 per share on May 17, 2019 before NASDAQ halted trading in ChinaCache ADRs at 11:12 a.m. Eastern Time.

8.      On May 23, 2019, ChinaCache disclosed receipt of a NASDAQ Notification Letter concerning the Company's failure to comply with the NASDAQ listing requirements, citing the Company's delay in filing the 2018 20-F (the "NASDAQ Letter").  The NASDAQ Letter also posed several questions to the Company regarding the resignation of Grant Thornton China as the Company's independent registered public accounting firm ("IRPAF"), ChinaCache's engagement of Michael T. Studer CPA P.C. ("Studer") as the Company's new IRPAF, and the allegations of enterprise bribery against Defendants ChinaCache and Wang.  According to the NASDAQ Letter, ChinaCache was required to submit its plan to regain compliance with the NASDAQ listing requirements, as well as to provide its responses to the NASDAQ Letter's questions, no later than May 31, 2019.

9.      On May 31, 2019, ChinaCache filed a Report of Foreign Private Issuer on Form 6-K with the SEC, wherein the Company disclosed that it had "terminated Michael T. Studer CPA P.C. as the Company's independent registered public accounting firm" (the "May 2019 6-K"). According to the May 2019 6-K, "[t]he decision was approved by the Company's Audit Committee" and "[t]he Company intend[ed] to appoint a new auditor in the near future." The May 2019 6-K also noted that "[t]he timing of the [Company's] new auditor's appointment is dependent on the status of its ongoing investigation."

10.     Finally, on June 6, 2019, ChinaCache issued a press release announcing the resignation of Defendant Wang from the Company's Board of Directors.

11.     Trading in ChinaCache ADRs on the NASDAQ remains halted as of the date this Complaint was filed.

12.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

15.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). ChinaCache ADRs trade on the NASDAQ, located within this Judicial District.

16.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

17.    Plaintiff, as set forth in the attached Certification, acquired ChinaCache securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

18.    Defendant ChinaCache is organized under the laws of the Cayman Islands, with principal executive offices located at Section A, Building 3, Dian Tong Creative Square, No. 7 Jiuxianqiao North Road, Chaoyang District, Beijing, 100015, China.  ChinaCache ADRs trade in an efficient market on the NASDAQ under the symbol "CCIH".

19.    Defendant Wang served as ChinaCache's Founder, Chairman, and CEO at all relevant times.

20.    Defendant Guangsheng Meng ("Meng") has served as ChinaCache's Chief Financial Officer ("CFO") since April 20, 2018.

21.    Defendant Fengye Gao ("Gao"), ChinaCache's Financial Controller, assumed the responsibilities of the Company's principal financial and accounting officer on September 6, 2017, on the same date Defendant Naijiang Zhou ("Zhou") resigned as interim CFO.  Defendant Gao served in this capacity while the Company searched for a permanent CFO.

22.    Defendant Jing An ("An") served as ChinaCache's CFO from August 19, 2014, until July 1, 2016.  Before ChinaCache appointed Defendant An as CFO, she served as the Company's acting CFO and Vice President of Finance since March 2013.

23.    The Defendants referenced above in ¶¶ 19-22 are sometimes referred to herein collectively as the "Individual Defendants."

24.    The Individual Defendants possessed the power and authority to control the contents of ChinaCache's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of ChinaCache's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with ChinaCache, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

25.    ChinaCache was founded in 1998 and is headquartered in Beijing, China. ChinaCache is an investment holding company that provides content and application delivery services in the PRC.

26.    ChinaCache purports to offer a portfolio of services and solutions to businesses, government agencies, and other enterprises to enhance the reliability and scalability of their online services and applications.

### Materially False and Misleading Statements Issued During the Class Period

27.    The Class Period begins on April 10, 2015, when ChinaCache filed its Annual Report on Form 20-F with the SEC, reporting the Company's financial and operating results for

the fiscal year ended December 31, 2014 (the "2014 20-F").  For 2014, Defendants reported a net loss of $1.11 million, or $0.04 per diluted share, on net revenue of $224.68 million, compared to a net loss of $5.57 million, or $0.25 per diluted share, on net revenue of $179.46 million in 2013.

28.    The 2014 20-F also stated that ChinaCache is subject to both Chinese and U.S. anti-corruption laws, including  the U.S. Foreign Corrupt Practices Act ("FCPA"), which prohibit companies and anyone acting on their behalf from, *inter alia*, "offering or making improper payments[.]"  The 2014 20-F touted Defendants' "policies prohibit[ing] any such conduct" and asserted that the Company "require[d] that [Defendants], [Defendants'] employees and intermediaries comply with the FCPA and other anti-corruption laws to which [Defendants] are subject."

29.    Additionally, the 2014 20-F contained merely generic, boilerplate representations concerning the risk that Defendants might nonetheless violate anti-corruption laws because:  (i) there was "no assurance that such policies or procedures [would] work effectively all the time" or would "protect [Defendants] against liability under the FCPA or other anti-corruption laws for actions taken by [Defendants'] employees and intermediaries" with respect to Defendants' current or acquired businesses; and (ii) Defendants "operate in the content and application delivery services industry in China[,]" transacting with "state or government-owned telecommunications carriers" and government agencies, which created an "elevated risk" of violating anti-corruption laws.

30.    The 2014 20-F also contained merely generic, boilerplate representations to the effect that, should a government agency find that Defendants violated anti-corruption laws, they could "be subject to criminal and civil penalties and other remedial measures, which could have an adverse impact on [ChinaCache's] business, financial condition and results of operations[,]" as

well as an adverse impact the Company's reputation, which could "cause [Defendants] to lose customer sales and access to end-user access networks, and lead to other adverse impacts on [ChinaCache's] business, financial condition and results of operations."

31.     Appended as exhibits to the 2014 20-F were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants Wang and An certified that "[t]he [2014 20-F] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934[,]" and that "[t]he information contained in the [2014 20-F] fairly presents, in all material respects, the financial condition and results of operations of the Company.

32.     On April 27, 2016, ChinaCache filed its Annual Report on Form 20-F with the SEC, reporting the Company's financial and operating results for the fiscal year ended December 31, 2015 (the "2015 20-F").  For 2015, Defendants reported a net loss of $14.12 million, or $0.56 per diluted share, on net revenue of $215.42 million, compared to a net loss of $1.11 million, or $0.04 per diluted share, on net revenue of $224.68 million in 2014.

33.     Additionally, the 2015 20-F contained statements identical to those quoted in ¶¶ 28-30 above, touting ChinaCache's purported anti-corruption policies while providing merely generic, boilerplate representations that the Company could face severe penalties for violating anti-corruption laws.

34.     Appended as exhibits to the 2015 20-F were signed SOX certifications wherein Defendants Wang and An certified that "[t]he [2015 20-F] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934[,]" and that "[t]he information contained in the [2015 20-F] fairly presents, in all material respects, the financial condition and results of operations of the Company."

35.     On November 14, 2017, ChinaCache filed its Annual Report on Form 20-F with the SEC, reporting the Company's financial and operating results for the fiscal year ended December 31, 2016 (the "2016 20-F").  For 2016, Defendants reported a net loss of $137.56 million, or $5.39 per diluted share, on net revenue of $158.76 million, compared to a net loss of $14.12 million, or $0.56 per diluted share, on net revenue of $215.42 million in 2015.

36.     Additionally, the 2016 20-F contained statements identical to those quoted in ¶¶ 28-30 above, touting ChinaCache's purported anti-corruption policies while providing merely generic, boilerplate representations that the Company could face severe penalties for violating anti-corruption laws.

37.     Appended as exhibits to the 2016 20-F were signed SOX certifications wherein Defendants Wang and Gao certified that "[t]he [2016 20-F] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934[,]" and that "[t]he information contained in the [2016 20-F] fairly presents, in all material respects, the financial condition and results of operations of the Company."

38.     On April 30, 2018, ChinaCache filed its Annual Report on Form 20-F with the SEC, reporting the Company's financial and operating results for the fiscal year ended December 31, 2017 (the "2017 20-F").  For 2017, Defendants reported a net loss of $54.69 million, or $2.06 per diluted share, on net revenue of $126.31 million, compared to a net loss of $137.56 million, or $5.39 per diluted share, on net revenue of $158.76 million in 2016.

39.     Additionally, the 2017 20-F contained statements substantively identical to those quoted in ¶¶ 28-30 above, touting ChinaCache's purported anti-corruption policies while providing merely generic, boilerplate representations that the Company could face severe penalties for violating anti-corruption laws.  The 2017 20-F went further, however, than statements in the

Company's prior annual reports, and represented that "company policies *strictly* prohibit" (emphasis added), as opposed to merely prohibit, any conduct that violates anti-corruption laws.

40.     Appended as exhibits to the 2017 20-F were signed SOX certifications wherein Defendants Wang and Meng certified that "[t]he [2017 20-F] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934[,]" and that "[t]he information contained in the [2017 20-F] fairly presents, in all material respects, the financial condition and results of operations of the Company."

41.     On April 11, 2019, ChinaCache filed a Report of Foreign Private Issuer on Form 6-K with the SEC, reporting that, on April 8, 2019, Grant Thornton China, the China member firm of Grant Thornton International, Ltd., had resigned as ChinaCache's IRPAF (the "April 2019 6-K"). Specifically, the April 2019 6-K stated, in relevant part:

> On April 8, 2019, Grant Thornton China ("GT"), the China member firm of Grant Thornton International, Ltd., resigned as ChinaCache International Holdings Ltd. (the "Company")'s independent registered public accounting firm. Since the commencement of GT's engagement in December 2018 through April 4, 2019, there were no disagreements with GT on any matter of accounting principles or practices, financial statement disclosure, or auditing scope or procedures, which, if not resolved to GT's satisfaction would have caused GT to make reference to the subject matter of the disagreement(s) in connection with its audit report. GT has not issued any report on the consolidated financial statements of the Company for any prior fiscal year.

42.     Additionally, according to the April 2019 6-K, ChinaCache had engaged Studer as the Company's IRPAF on April 10, 2019. The April 2019 6-K did not mention what, if any, effect this sudden change in the Company's IRPAF would have on the Company's upcoming deadline to file the 2018 20-F.

43.     The statements referenced in ¶¶ 27-42 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically,

Defendants made false and/or misleading statements and/or failed to disclose that: (i) ChinaCache and Defendant Wang were engaged in enterprise bribery; (ii) the foregoing conduct placed ChinaCache and Wang at a heightened risk of criminal investigation and enforcement action by government authorities, which would foreseeably disrupt the Company's operations; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

44.    On April 29, 2019, eighteen days after ChinaCache reported that it had replaced its IRPAF, the Company filed a Notification of Late Filing on Form NT 20-F with the SEC revealing that the Company would delay filing the 2018 20-F. According to the Form NT 20-F, ChinaCache was delaying the 2018 20-F's filing "because U.S. GAAP audited financial statements of the [Company] are not yet available."

45.    Then, on May 17, 2019, ChinaCache announced that the Company and Defendant Wang were under criminal investigation by a government prosecutor office in Beijing for charges of enterprise bribery, and that Wang had resigned as CEO. Specifically, the May 2019 Press Release stated, in relevant part:

> The Company has received a notice from a government prosecutors' office in Beijing that the Company is currently under investigation for allegations of enterprise bribery. The Company has engaged a criminal defense counsel to prepare for the relevant legal proceedings. As the legal proceedings are still at a relatively early stage, the Company is currently unable to assess the likely outcomes of such proceedings.
>
> Mr. Song Wang has been arrested and is also currently under investigation for the allegations of enterprise bribery against the Company. Mr. Song Wang has tendered his resignation as the Company's Chief Executive Officer to the Board.

46.    On this news, ChinaCache's ADR price fell $0.22 per share, or 20%, to $0.88 per share on May 17, 2019 before NASDAQ halted trading in ChinaCache ADRs at 11:12 a.m. Eastern Time. NADSAQ announced that trading was halted on ChinaCache securities for "additional

information" requested from the Company and that "[t]rading will remain halted until ChinaCache International Holdings Ltd. has fully satisfied Nasdaq's request for additional information."

47.     On May 23, 2019, ChinaCache disclosed receipt of a NASDAQ Notification Letter concerning the Company's failure to comply with the NASDAQ listing requirements, citing the Company's delay in filing the 2018 20-F.  The NASDAQ Letter also posed several questions to the Company regarding the resignation of Grant Thornton China, ChinaCache's engagement of Studer, and the allegations of enterprise bribery against Defendants ChinaCache and Wang. According to the NASDAQ Letter, ChinaCache was required to submit its plan to regain compliance with the NASDAQ listing requirements, as well as to provide its responses to the NASDAQ Letter's questions, no later than May 31, 2019.

48.     On May 31, 2019, ChinaCache filed a Report of Foreign Private Issuer on Form 6-K with the SEC, wherein the Company disclosed that it had "terminated Michael T. Studer CPA P.C. as the Company's independent registered public accounting firm."  According to the May 2019 6-K, "[t]he decision was approved by the Company's Audit Committee[,]" and "[t]he Company intends to appoint a new auditor in the near future."  The May 2019 6-K also noted that "[t]he timing of the [Company's] new auditor's appointment is dependent on the status of its ongoing investigation."

49.     Finally, on June 6, 2019, ChinaCache issued a press release announcing the resignation of Defendant Wang from the Company's Board of Directors.

50.     Trading in ChinaCache ADRs on the NASDAQ remains halted as of the date this Complaint was filed.

51.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

52.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired ChinaCache securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

53.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, ChinaCache securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by ChinaCache or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

54.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

55.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

56.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of ChinaCache;

- whether the Individual Defendants caused ChinaCache to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of ChinaCache securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

57.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

58.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- ChinaCache  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold ChinaCache securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

59.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

60.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## <u>COUNT I</u>

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

61.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

62.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

63.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of ChinaCache securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire ChinaCache securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

64.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for ChinaCache securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about ChinaCache's finances and business prospects.

65.     By virtue of their positions at ChinaCache, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants

acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

66.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of ChinaCache, the Individual Defendants had knowledge of the details of ChinaCache's internal affairs.

67.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of ChinaCache. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to ChinaCache's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of ChinaCache securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning ChinaCache's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired ChinaCache securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

68.    During the Class Period, ChinaCache securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of ChinaCache securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of ChinaCache securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of ChinaCache securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

69.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

70.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

71.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

72.    During the Class Period, the Individual Defendants participated in the operation and management of ChinaCache, and conducted and participated, directly and indirectly, in the conduct of ChinaCache's business affairs.  Because of their senior positions, they knew the adverse non-public information about ChinaCache's misstatement of income and expenses and false financial statements.

73.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to ChinaCache's financial condition and results of operations, and to correct promptly any public statements issued by ChinaCache which had become materially false or misleading.

74.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which ChinaCache disseminated in the marketplace during the Class Period concerning ChinaCache's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause ChinaCache to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of ChinaCache within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of ChinaCache securities.

75.    Each of the Individual Defendants, therefore, acted as a controlling person of ChinaCache.  By reason of their senior management positions and/or being directors of ChinaCache, each of the Individual Defendants had the power to direct the actions of, and

exercised the same to cause, ChinaCache to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of ChinaCache and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

76.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by ChinaCache.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  June 12, 2019

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Jonathan Lindenfeld

600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com
Email: jlindenfeld@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*